UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| James E.,                              | )                                        |
|                                         | )                                        |
|     Plaintiff,                          | )                                        |
|                                         | )                                        |
| v.                                      | ) No. 17 CV 50295                        |
|                                         | ) Magistrate Judge Iain D. Johnston      |
| Nancy A. Berryhill, Acting              | )                                        |
| Commissioner of Social Security,        | )                                        |
|                                         | )                                        |
|     Defendant.                          | )                                        |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, now 49 years old, suffers from degenerative disc disease, diabetic peripheral neuropathy, and psychological problems. He uses a cane, and allegedly has "daily episodes of falling" caused by weakness in his legs and an abnormal gait. Dkt. #16 at 2. In 2013, he filed for disability benefits.[1] He alleges that numbness in his extremities allows him to sit, stand, or walk for only very short periods. He can only concentrate for brief periods, and suffers from daily migraines. The ALJ denied his claim, finding that these allegations were inconsistent with the record in various ways. In this appeal, plaintiff raises arguments attacking both the listing and RFC analyses.[2] Many of these are technical arguments often raised by plaintiff's counsel. Even though doubt remains as to whether plaintiff will ultimately be found disabled, the Court finds that a remand is required.

This conclusion is based on plaintiff's first, and strongest, argument. It is directed at the ALJ's finding that plaintiff did not meet or equal Listing 11.14 ("Peripheral neuropathies."). This is a narrow argument, and it can be addressed in relatively short order without delving into the

---

[1] He previously filed disability applications in 2008, 2009, and 2012. R. 84.
[2] The Court will assume the reader is familiar with the basic Social Security abbreviations and jargon.

1

specific listing requirements. Plaintiff argues that the ALJ "played doctor" in analyzing this particular listing.[3] Plaintiff notes that the State agency doctors did not analyze this listing, and the ALJ did not call a medical expert at the hearing. Plaintiff's argument focuses mostly on whether plaintiff equals (as opposed to meets) this listing. In his opening brief, he cited to two Seventh Circuit cases holding that "[a] finding of medical equivalence requires an expert's opinion on the issue." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("the ALJ never consulted a medical expert regarding whether the listing was equaled"). This is a straightforward argument based on the rule in these two cases.

In its response, the Government attempts to navigate around this case law by raising a novel and technical argument. The Government concedes that the State agency doctors did not address listing 11.14 on the form entitled "Disability Determination Explanation" (the "Explanation form").[4] Exs. 3A-6A. On this form, the Agency doctors indicated that they had considered listings 1.04 ("Spine Disorders"), 12.08 ("Personality Disorders"), and 12.09 ("Substance Addiction Disorders"). R. 88, 100, 115, 130. To state the obvious, Listing 11.14 was not mentioned. The Government argues, however, the Agency doctors *implicitly considered and rejected* Listing 11.14 based on the separate, contemporaneous one-page form entitled "Disability Determination and Transmittal" (the "Transmittal form"). Exs. 1A-2A. This form does not contain any analysis and merely sets forth bare-bones information, bureaucratic in nature, including a numerical-letter code indicating (according to the Government) that "no listing was met or medically equaled."[5] Dkt. #19 at 5. The Government argues that it is

---

[3] The ALJ's specific reasoning was as follows: "Despite having diabetic peripheral neuropathy diagnosed on January 17, 2013, he does not have significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station for 11.14, peripheral neuropathies (4F, 19F/32, and 21F/13)." R. 21.
[4] This form contains specific questions the doctors must answer, and the completed forms in this case ranged from 12 to 15 pages, a typical length for such forms.
[5] For example, the relevant code on one of the Transmittal forms is "J1-1520(f)." R. 81.

reasonable to infer from this numerical-letter code that the agency doctor considered every possible listing and then concluded none were met or equaled. In effect, under the Government's view, the Transmittal form acts like a Zamboni by smoothing over flaws or omissions in the Explanation form.

The Court is not persuaded by this argument. As for legal authority, the Government ignores the two Seventh Circuit cases cited by plaintiff—*Minnick* and *Barnett*—and relies instead on an earlier Seventh Circuit case—*Scheck v. Barnhart*, 357 F.3d 697 (7th Cir. 2004). According to the Government, *Scheck* holds that the Transmittal form "alone is sufficient" to establish that the Agency doctor considered every possible listing. Dkt. #19 at 5. But in reading *Scheck*, it is not clear that the Seventh Circuit was considering the situation where the Explanation and Transmittal forms were ostensibly conflicting, as here, or that the Seventh Circuit was announcing a rule that Transmittal form trumped the Explanation form in the event of an implied conflict. Moreover, even if the Government's reading of *Scheck* were correct, there would still be an additional question of how to reconcile *Scheck* with the Seventh Circuit's later decision in *Minnick*. The Government did not offer an explanation.

As a matter of policy, the Government makes the slippery slope argument that it would be impractical for Agency doctors, on the Explanation form, to "identify *every* listing a claimant does not meet." *Id.* at 5 (emphasis added). But this argument is a red herring. Plaintiff is not suggesting that agency doctors must rotely go through every single listing no matter how implausible. Rather, plaintiff is arguing that, specifically for this one listing (11.14), there was enough evidence to make a *colorable* argument that it might apply, which in turn meant that a medical opinion was needed.[6] Here, on the Explanation form, the Agency doctors did explicitly

---

[6] Plaintiff relies on various pieces of evidence to support this assertion, including the statement from his treating neurologist that plaintiff had "severe generalized polyneuropathy." R. 672.

3

consider three listings (1.04, 12.08, and 12.09), showing that these doctors believed that *some* listings deserved to be mentioned explicitly. Under the Government's argument, there would be no need to ever identify *any* specific listing by name on the Explanation form. A second roadblock to the Government's argument is that the ALJ, in the written decision, chose to explicitly analyze whether plaintiff met Listing 11.14. This suggests that the ALJ independently concluded that there was enough evidence to make a colorable argument that plaintiff met Listing 11.14. In sum, for the above reasons, the Court finds that a remand is required because the ALJ failed to obtain a supporting medical opinion on these issues.

Having concluded that a remand is required, this Court will not address plaintiff's remaining arguments for several reasons.[7] There are many arguments, and they would require a fair amount of judicial resources to go through all of them; the Court finds that they are weaker in any event; and it is possible that the ALJ and counsel can address and rectify the alleged errors on remand, especially if the ALJ calls a medical expert at a new hearing.

A final note. One unfortunate but recurring aspect in disability appeals brought to this Court is that arguments raised here often were not raised during the administrative hearing even though they could have been raised there. This is true in this case as well. Plaintiff's counsel submitted a three-page pre-hearing brief to the ALJ; participated in the administrative hearing; and then submitted a two-page brief to the Appeals Council. *See* Exs. 12E, 14E. But counsel failed to raise several arguments now raised here. For example, counsel never argued that plaintiff met listings 1.04 or 11.14 and never requested that a medical expert be called to address any technical questions. Counsel also now complains here that the ALJ failed to pose proper

---

[7] Plaintiff argues that the ALJ provided a perfunctory analysis of Listing 1.04; failed to engage in a function-by-function analysis of plaintiff's work limitations (this argument contains multiple sub-arguments); failed to include a hypothetical to the vocational expert about plaintiff's moderate limitation in concentration, persistence, or pace; and erred in evaluating plaintiff's credibility (again, multiple sub-arguments).

4

hypothetical questions to the vocational expert at the hearing, but counsel was allowed to question this same witness and did not bring up these concerns at that time. The Government has not argued that these arguments have been waived, and the Court is not aware of grounds for making such an argument. But the Court continues to believe that a waiver doctrine would be both fair and efficient by encouraging counsel to raise these issues during the administrative proceedings. Even if there is no formal waiver doctrine, as a practical matter, counsel's failure to raise arguments in the administrative proceedings raises a question about how significant the alleged errors were. And it also raises concerns about sandbagging. For these reasons, on remand in this case, as well as in future cases, the Court strongly encourages plaintiff's counsel to explicitly and contemporaneously raise any perceived errors so that the ALJ (or Appeals Council) is given the opportunity to address them.

    For the above reasons, plaintiff's motion for summary judgment is granted, the Government's motion is denied, and the case is remanded for further proceedings.

Date:  February 11, 2019        By: _____
                                                          Iain D. Johnston
                                                          United States Magistrate Judge